OPINION
{¶ 1} Defendant-appellant, Shane Schandel, appeals from a Carroll County Common Pleas Court judgment convicting him of theft, receiving stolen property, and trafficking in drugs, following a jury trial.
 {¶ 2} This case involves two different incidents, one involving drugs sales and one involving a theft of copper wire.
 {¶ 3} The first set of facts involves two drug sales occurring on September 20 and 22, 2005. According to confidential informant (CI) David Shattuck, on these occasions appellant sold him Vicodin pills. These drug sales were set up and monitored by Carroll County Sheriff's Deputy Robert Watson.
 {¶ 4} The second set of facts involves the theft of copper wire from a barn located on what is known as the "Dawson farm" in May 2006. For some time, appellant and several others lived on the Dawson farm in various trailers. The Dawson farm contains a large barn. Several of the trailer residents admitted to stealing aluminum roofing from the barn and selling it to a scrap metal yard. These residents then implicated appellant in the theft of the copper wire from the barn.
 {¶ 5} Based on these two sets of events, on July 5, 2006, a Carroll County grand jury indicted appellant on one count of breaking and entering, a fifth-degree felony in violation of R.C. 2911.13(A); one count of theft, a fifth-degree felony in violation of R.C. 2913.02(A)(1); one count of receiving stolen property, a fifth-degree felony in violation of R.C. 2913.51(A); and two counts of trafficking in drugs, fourth-degree felonies in violation of R.C. 2925.03(A)(1).
 {¶ 6} The matter proceeded to a jury trial where the jury found appellant guilty of theft, receiving stolen property, and one count of trafficking in drugs. The jury found appellant not guilty of breaking and entering and the other count of trafficking in drugs. The trial court subsequently sentenced appellant to 12 months for theft and ordered that appellant, jointly and severally with his co-defendants who were convicted of stealing the aluminum roofing, pay restitution in the amount of $5,030. The court then found that for sentencing purposes, receiving stolen property merged with theft. Additionally, the court sentenced appellant to 18 months for *Page 3 
trafficking in drugs. Finally, the court ordered that appellant serve his sentences consecutively for a total of 30 months.
 {¶ 7} Appellant failed to file a timely notice of appeal. However, this court granted him leave to file a delayed appeal, which he did.
 {¶ 8} Appellant raises seven assignments of error, the first of which states:
 {¶ 9} "THE TRIAL COURT ERRED, WHEN IT DENIED SCHANDEL'S MOTION TO SEVER THE CHARGES CONTAINED IN THE INDICTMENT, BECAUSE THE ALLEGED OFFENSES AROSE FROM TWO COMPLETELY UNRELATED INCIDENTS. THIS ERROR DEPRIVED SCHANDEL OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW, AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."
 {¶ 10} As set out above, appellant's indictment included charges relating to two separate situations. Appellant argues that because the two situations were completely unrelated, the trial court should have granted his motion for separate trials. He first contends that the theft offenses and the drug offenses should not have even been charged in the same indictment because nothing linked them together. Second, appellant contends that he was prejudiced by the joinder of the theft offenses and drug offenses. He points out that the facts relating to the theft offenses would not have been admissible at a trial on the drug offenses and vice versa had he had separate trials. He points out that the two sets of offenses involved different times, different victims, different witnesses, and different evidence. Additionally, appellant argues that the evidence of each set of crimes was not simple and distinct and there was not overwhelming evidence of guilt as to any of the charges. Therefore, appellant argues that it was likely that the jury improperly accumulated the evidence of the separate offenses to find him guilty of some of the offenses charged.
 {¶ 11} An appellate court will only reverse a trial court's denial of severance if the trial court abused its discretion. State v.Skatzes, 104 Ohio St.3d 195, *Page 4 819 N.E.2d 215, 2004-Ohio-6391, at ¶ 33. Abuse of discretion connotes more than an error of law; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 12} Crim. R. 8(A) provides that two or more offenses may be charged in the same indictment if the offenses are (1) of the same or similar character, or (2) are based on the same act or transaction, or (3) are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or (4) are part of a course of criminal conduct. "The law favors joining multiple offenses in a single trial under Crim. R. 8(A) if the offenses charged `are of the same or similar character.'" State v. Lott (1990), 51 Ohio St.3d 160,163, 555 N.E.2d 293, quoting State v. Torres (1981), 66 Ohio St.2d 340,421 N.E.2d 1288.
 {¶ 13} In this case, the theft offenses should not have been joined in the same indictment as the drug offenses. None of the four alternatives set out in Crim. R. 8(A) exist here.
 {¶ 14} In discussing the joinder statute, the Ohio Supreme has held: "When a statute states specific areas of proper joinder, a joinder that fails to fall within such areas is improper." State v. Atkinson (1965),4 Ohio St.2d 19, 22, 211 N.E.2d 665.
 {¶ 15} In this case, the theft offenses were not of the same or similar character as the drug offenses. While in some cases theft of property may be directly related to drug offenses, such was not the case here. There was no testimony whatsoever that the theft of the copper wire from the Dawson farm had anything to do with drugs or drug sales. Additionally, the theft offenses and the drug offenses were not based on the same act or transaction. The drug offenses were alleged to have occurred in September 2005. The theft offenses were alleged to have occurred eight months later. These two sets of events were completely separate from each other. No evidence was presented that appellant did anything in the eight-month period between the two sets of crimes that would link them together. This also demonstrates that the two sets of offenses were not connected together nor did they constitute parts of a common scheme or plan. The two sets of offenses did not *Page 5 
involve the same witnesses, victims, or evidence. Furthermore, there was no evidence that the two sets of crimes were part of a course of criminal conduct. Again, absolutely no evidence connected the drug offenses to the theft offenses.
 {¶ 16} The only commonality shared by the drug offenses and the theft offenses was that appellant was alleged to have committed them both. Other than that, the two sets of crimes were unrelated.
 {¶ 17} The Second District has held that where the offenses charged against the defendant involved different crimes at different times at different locations on different dates and the offenses involved different victims, different witnesses, different investigating officers, and completely different evidence, the offenses should not have been joined for trial. State v. Clements (1994),98 Ohio App.3d 797, 799, 649 N.E.2d 912.
 {¶ 18} The remedy for the misjoinder of offenses in an indictment is not the dismissal of the indictment. R.C. 2941.28(B). Instead, the court is to sever the indictment into separate indictments. R.C. 2941.28. Thus, in this case the trial court should have severed the indictment into two separate indictments: one involving the drug offenses and one involving the theft offenses.
 {¶ 19} Since the theft offenses should not have been joined with the drug offenses, we must determine whether this error prejudiced appellant and caused him to receive an unfair trial.
 {¶ 20} "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct."State v. Schaim (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661. When simple and distinct evidence exists, an accused is not prejudiced by the joinder of multiple offenses in a single trial, regardless of whether the evidence is admissible as other-acts evidence. State v. Coley
(2001), 93 Ohio St.3d 253, 260, 754 N.E.2d 1129. *Page 6 
 {¶ 21} In this case, evidence of the alleged drug sales would not have been admissible at a trial on the theft offenses and vice versa. As noted above, the two sets of offenses involved different types of offenses, different victims, different witnesses, and occurred at different times.
 {¶ 22} But the evidence offered as to the two sets of offenses was simple and distinct. To prove the drug offenses, the state presented three witnesses, Deputy Watson, Sheriff Dale Williams, and David Shattuck, the CI. Deputy Watson testified that he set up a controlled Vicodin buy with Shattuck and monitored the sale. He further testified that the pills Shattuck purchased from appellant were hydrocodone, the generic name for Vicodin. Sheriff Williams testified that he accompanied Deputy Watson in monitoring the controlled buy. And Shattuck testified that he purchased Vicodin on September 20, and 22, 2005, from appellant at appellant's residence and that he did so while under surveillance by Deputy Watson.
 {¶ 23} To prove the theft offenses, the state offered testimony from Sheriff Williams, Robert German, Sean Nolan, Nicole Bryant, Jeremy Mullins, Raymond Johnson, and Kerry Teeter.
 {¶ 24} Sheriff Williams testified that Sky Bank, which now owns the Dawson farm, reported a theft of property from the farm. He stated that he observed the property and spoke with those involved in stealing the aluminum roofing. This led Sheriff Williams to a second investigation into the theft of the copper wire. German testified that he went with appellant to the scrap yard where they sold copper wire. Nolan testified that he saw appellant in the barn cutting wires. Bryant testified that she saw appellant burning the plastic off of copper wire so that he could take it to the scrap yard. Mullins testified that he too saw appellant burning copper wire. Johnson testified that appellant told him that the copper wire was there for the taking. Finally, Teeter testified as to Sky Bank's ownership interest in the Dawson farm.
 {¶ 25} Only one witness, Sheriff Williams, overlapped the two sets of offenses. And it seems to have merely been a coincidence that he was involved in both. He was not conducting any type of on-going investigation into appellant. The rest of the *Page 7 
evidence was distinct as it clearly applied to only one or the other set of offenses. Furthermore, the evidence as to the drug offenses was very simple and straightforward to understand. And the evidence as to the theft offenses, while a bit more complicated, was still not overly complex so as to confuse the jury.
 {¶ 26} Moreover, the jury was able to separate the evidence as to each of the five charged offenses. The jury found appellant guilty of one drug trafficking charge but acquitted him of the other. And while the jury found appellant guilty of theft and receiving stolen property, it found him not guilty of breaking and entering. The jury's verdicts demonstrate that they were able to consider the evidence independently as it pertained to each individual charge and did not lump the charges together.
 {¶ 27} Since the evidence as to each set of crimes was simple and distinct and because the jury demonstrated that they were able to consider the evidence separately as to each individual count of the indictment, appellant was not prejudiced by the court's failure to separate the drug offenses from the theft offenses. Accordingly, appellant's first assignment of error is without merit.
 {¶ 28} Appellant's second assignment of error states:
 {¶ 29} "THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT OF CONVICTION IN THE ABSENCE OF SUFFICIENT EVIDENCE TO ESTABLISH SCHANDEL'S GUILT OF THE OFFENSE OF THEFT, AND WHEN SCHANDEL'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN CONTRAVENTION OF THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10
AND 16, ARTICLE I OF THE OHIO CONSTITUTION."
 {¶ 30} Here appellant's argument is twofold. First, he argues that the state failed to present sufficient evidence to convict him of theft and receiving stolen property. Specifically, he asserts that the state failed to present evidence that he acted knowingly or with the purpose to deprive the owner of the property. He contends that the evidence established that at the time of the theft offenses, it was believed that the farm property from which copper wire had been removed was *Page 8 
abandoned. Appellant points out that the bank possessed only a collateral interest in the farm property and not an ownership interest. Additionally, appellant asserts that the state failed to present evidence that the value of the property taken exceeded $500, as was required to elevate the offense to a fifth-degree felony. He asserts that none of the various witnesses who testified that the copper wire's value exceeded $500 were qualified to render such an opinion.
 {¶ 31} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict.State v. Smith (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, 80 Ohio St.3d at 113.
 {¶ 32} The jury convicted appellant of theft in violation of R.C. 2913.02(A)(1) and receiving stolen property in violation of R.C. 2913.51(A).
 {¶ 33} R.C. 2913.02(A)(1) provides:
 {¶ 34} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 35} "(1) Without the consent of the owner or person authorized to give consent."
 {¶ 36} R.C. 2913.51(A) provides: "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
 {¶ 37} The evidence revealed that appellant took copper wire from the barn on the Dawson farm. Nolan testified that he actually saw appellant in the rafters of the *Page 9 
barn cutting wires. (Vol. II, Tr. 9). Bryant testified that she saw appellant in the barn burning the plastic off of copper wires. (Vol. II, Tr. 25-26). German stated that he went with appellant to the scrap yard shortly after the theft was alleged to have occurred and that appellant sold copper wire while there. (Vol. I, Tr. 226-28).
 {¶ 38} Appellant contends that the state failed to prove that he acted with the purpose to deprive the owner of the copper wire as was required. The Sky Bank representative, Kerry Teeter, testified that at the time the wire was taken from the barn, the Dawson farm was in foreclosure and Sky Bank owned a collateral interest in the property. (Vol. II, Tr. 72-73, 81). However, simply because Sky Bank held only a collateral interest in the Dawson farm at the time the wire was stolen, does not mean that just anyone could remove property from the farm. Furthermore, the other residents of the Dawson farm who were convicted of stealing the barn's aluminum roofing testified that they knew that they were involved in a theft when they took the roofing. (Vol. II, Tr. 9, 32, 43). Construed in the light most favorable to the prosecution, this evidence was sufficient to demonstrate that appellant acted with the purpose to deprive the owner of the copper wire.
 {¶ 39} Theft is a misdemeanor when the value of the property stolen is less than $500. R.C. 2913.02(B)(2). If the value of the property is $500 or more and is less than $5,000, theft is a fifth-degree felony. R.C. 2913.02(B)(2).
 {¶ 40} Appellant claims that the state failed to prove that the value of the stolen wire exceeded $500. But the evidence indicates otherwise. Sheriff Williams testified that he was familiar with the property taken from the barn and that he has been involved in many similar cases where materials are stolen and then sold to be recycled. (Vol. I, Tr. 201-202). He stated that he could not give an exact dollar figure, but that the wire that was taken from the barn was worth a lot of money, specifically more than $500. (Vol. I, Tr. 203). Additionally, Mullins testified as to the condition of the wire before it was removed from the barn. (Vol. II, Tr. 50). He too opined that the wire was worth more than $500. (Vol. II, Tr. 50). Finally, Johnson, *Page 10 
who used to work in the barn and was extremely familiar with the wire before it was stolen, opined that the value of the wire exceeded $500. (Vol. II, Tr. 62-62).
 {¶ 41} Appellant argues that these witnesses were not qualified to give an opinion to the wire's value. Generally, before a witness may give an opinion on the value of property, the witness must be qualified as an expert. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 605 N.E.2d 936, paragraph one of the syllabus. The determination of whether a witness is sufficiently acquainted with an object to give testimony about its value is within the discretion of the trial court. State v. Heap, 1st Dist. No. C-040007, 2004-Ohio-5850, at ¶ 23. The credibility of the witness's opinion then goes to its weight rather than its admissibility. Id.
 {¶ 42} Here Sheriff Williams and Johnson were qualified to give their opinions on the wire's value. Sheriff Williams had worked on numerous similar cases where material was stolen and then sold to be recycled. Thus, he was likely familiar with the value of such items. And Johnson had worked on the Dawson farm in the barn and was highly familiar with it. Therefore, he too likely had a good idea of the wire's value. Mullins, however, did not give any testimony that indicated that he had a strong familiarity with the wire's value. Consequently, his testimony may have been unreliable. But given that Sheriff Williams and Johnson were likely qualified to render such opinions, sufficient evidence existed that the wire's value was more than $500.
 {¶ 43} For these reasons the jury's guilty verdicts on the theft and receiving stolen property charges were supported by sufficient evidence.
 {¶ 44} Second, appellant contends that all of his convictions were against the weight of the evidence. Appellant asserts that as to the drug offense, the CI's testimony was incredible because his girlfriend contradicted it. And as to the theft offenses, he contends that his convictions hinged on the testimony of three convicted thieves whose testimony was likewise incredible.
 {¶ 45} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and *Page 11 
all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, 78 Ohio St.3d at 387. "Weight of the evidence concerns `the inclination of the greater amount of credibleevidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 46} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 47} As to theft and receiving stolen property, in addition to the evidence set out above, the witnesses testified as follows.
 {¶ 48} Sheriff Williams testified that in investigating the theft of the aluminum roof from the barn, the individuals involved in the aluminum theft brought to his attention that the copper wire had also been removed from the barn and that appellant was involved. (Vol. I, Tr. 201, 203-204).
 {¶ 49} German testified that he was living in a trailer on the Dawson farm when the theft occurred, as was appellant. (Vol. I, Tr. 222, 224). German stated that on May 18, 2006, he went with appellant to a scrap yard that buys metal, aluminum, copper, and other materials. (Vol. I, Tr. 226). German further stated that appellant sold some copper wire there that day. (Vol. I, Tr. 226-29). However, German did not know where appellant got the wire from. (Vol. I, Tr. 229). German stated that because he helped appellant transport and sell the wire, he was charged with a misdemeanor stolen property offense. (Vol. I, Tr. 232). He stated that he agreed to testify in this case, in exchange for the state's recommendation of community control in his case. (Vol. I, Tr. 232).
 {¶ 50} In addition to testifying as to the value of the wire, Mullins testified that he saw appellant burning something in the barn. (Vol. II, Tr. 45). He further testified *Page 12 
that appellant turned him in to the police for stealing the aluminum roofing. (Vol. II, Tr. 47-48). And Mullins admitted that the reason he testified in this case was that since he got in trouble for stealing the aluminum, he believed that appellant should be accountable for stealing the wire. (Vol. II, Tr. 54-55).
 {¶ 51} And in addition to his testimony about the wire's value, Johnson also testified that appellant told him that the wire was for the taking because no one was living on the property at the time and the property was up for a sheriff's sale. (Vol. II, Tr. 60).
 {¶ 52} The witnesses' testimony clearly demonstrated that appellant cut copper wire out of the barn, burned the coating off from it, and sold it to a scrap yard. Appellant takes issue with the testimony of three of the witnesses' credibility. Nolan, Bryant, and Mullins were all convicted of theft offenses stemming from the theft of the aluminum roofing. This may have put their credibility at issue. However, whether to believe their testimony was for the jury, as the finders of fact, to determine. The jury was in the best position to judge their credibility.
 {¶ 53} Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, great deference must be given to the fact finder's determination of witnesses' credibility.State v. Wright, 10th Dist. No. 03AP-470, 2004-Ohio-677, at ¶ 11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Id. Given this presumption and the evidence supporting appellant's convictions on the theft offenses, we will not conclude that the theft and receiving stolen property convictions are against the weight of the evidence.
 {¶ 54} In addition to the theft offenses, the jury found appellant guilty of drug trafficking in violation of R.C. 2925.03(A)(1), which provides: "No person shall knowingly * * * [s]ell * * * a controlled substance." The jury found appellant guilty of the offense committed on September 22, 2005. *Page 13 
 {¶ 55} The state presented three witnesses who testified regarding the drug offenses.
 {¶ 56} Deputy Watson testified that Shattuck informed him that appellant was selling hydrocodone, a schedule three controlled substance. (Vol. I, Tr. 78-79). Deputy Watson stated that he and Shattuck set up a controlled buy on September 20, 2005. (Vol. I, Tr. 78, 88). However, the jury acquitted appellant of the drug trafficking charge involving this alleged sale. He also briefly testified about another buy the next day from appellant's girlfriend, Diane Lyons. (Vol. I, Tr. 102).
 {¶ 57} Deputy Watson then testified that he and Shattuck set up a second controlled buy on September 22, 2005. (Vol. I, Tr. 102-103). Prior to the drug buy, Deputy Watson met with Shattuck. (Vol. I, Tr. 104). He provided Shattuck with $30, the agreed price for 10 pills, and fitted Shattuck with an audio transmitter. (Vol. I, Tr. 104-105). Deputy Watson then followed Shattuck to appellant's trailer that he shared with Lyons. (Vol. I, Tr. 106). Deputy Watson stated that he heard Shattuck engage in some general conversation with appellant and Lyons. (Vol. I, Tr. 107). He then heard a rattle noise, which could have been a pill bottle, and then heard appellant say "here is ten." (Vol. I, Tr. 107). Deputy Watson then observed Shattuck leave appellant's trailer and followed him to their meeting spot. (Vol. I, Tr. 108). There Shattuck gave Deputy Watson ten pills. (Vol. I, Tr. 108). Deputy Watson sent these 10 pills to the Bureau of Criminal Identification and Investigation (BCI) to be tested. (Vol. I, Tr. 110). BCI then furnished Deputy Watson a report stating that the pills contained hydrocodone. (Vol. I, Tr. 111).
 {¶ 58} Next, the state played a portion of the audiotape of the controlled buy for the jury. (Vol. I, Tr. 117). Deputy Watson identified which voices on the tape were those of Shattuck and appellant. (Vol. I, Tr. 120). He further testified that he could hear children in the background, which was consistent with the information he knew that Lyons had several small children. (Vol. I, Tr. 126).
 {¶ 59} Finally, Deputy Watson stated that Lyons had pleaded guilty to aiding and abetting the September 22 hydrocodone sale. (Vol. I, Tr. 128). *Page 14 
 {¶ 60} Shattuck testified next. He stated that he contacted Deputy Watson and informed him that he could make a Vicodin buy from appellant. (Vol. I, Tr. 161). He testified regarding the first buy on September 20, of which the jury acquitted appellant, and of another buy the next day involving only Lyons. (Vol. I, Tr. 160-71).
 {¶ 61} Shattuck then testified about the controlled buy of September 22. He stated that he met with Deputy Watson prior to the sale and then went to appellant's trailer. (Vol. I, Tr. 174). Shattuck stated that he went inside with appellant and appellant sold him ten hydrocodone pills. (Vol. I, Tr. 174). He testified that appellant dumped ten pills onto the counter from a bottle and stated, "there is ten." (Vol. I, Tr. 175). Shattuck stated that he picked up the pills, had a brief conversation, and then left. (Vol. I, Tr. 175-76). For the pills, Shattuck stated that he gave appellant $30. (Vol. I, Tr. 177). After completing the sale, Shattuck stated that he met back with Deputy Watson and gave him the pills. (Vol. I, Tr. 178). Finally, Shattuck stated that children were present during the sale. (Vol. I, Tr. 181).
 {¶ 62} Additionally, Lyons testified on appellant's behalf. She took responsibility for the September 20 drug sale, which she stated took place in the car when appellant was not present. (Vol. II, Tr. 87-88). She then stated that she had a second drug deal with Shattuck the next day, during which appellant was not home. (Vol. II, Tr. 88-89).
 {¶ 63} Finally, Lyons testified regarding the September 22 drug sale. She stated that she was the one who sold the drugs to Shattuck on that date. (Vol. II, Tr. 89). She stated that the drugs belonged to her and that appellant did not know about the sale to Shattuck. (Vol. II, Tr. 89). She also stated that her and appellant's children were present on the date in question. (Vol. II, Tr. 98-100).
 {¶ 64} The evidence was clear that appellant sold ten hydrocodone pills to Shattuck on September 22 for $30. Appellant's only argument here is that Lyons testified she was the one who sold the drugs and this conflicted with Shattuck's testimony that appellant was the source of the drugs. Appellant is correct that Lyons's testimony contradicted Shattuck's testimony. But it was up to the jury to *Page 15 
make a determination about which conflicting testimony to accept as true. DeHass, 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The jury simply found Shattuck's testimony to be more truthful as to the September 22 drug sale. We will not second guess the jury's conclusion that Shattuck was the truthful witness. Thus, appellant's drug trafficking conviction was supported by the weight of the evidence.
 {¶ 65} For all of the reasons stated above, appellant's second assignment of error is without merit.
 {¶ 66} Appellant's third assignment of error states:
 {¶ 67} "THE TRIAL COURT ERRED WHEN IT QUESTIONED A WITNESS; WHEN IT SUA SPONTE INTERRUPTED A WITNESS' TESTIMONY TO OFFER AN INSTRUCTION OF LAW, WHICH DIRECTLY CONTRADICTED THE EVIDENCE; AND WHEN IT INSTRUCTED A WITNESS TO ANSWER A QUESTION THAT HAD BEEN WITHDRAWN BY THE PROSECUTOR. THESE ERRORS, ALONG WITH THE TRIAL COURT'S DECISION TO ALLOW THE JURY TO RETAIN A COPY OF THE INDICTMENT DURING THEIR DELIBERATIONS, DEPRIVED SCHANDEL OF HIS RIGHT TO A FAIR TRIAL, IN CONTRAVENTION OF THE DUE PROCESS CLAUSES CONTAINED IN THE STATE AND FEDERAL CONSTITUTIONS."
 {¶ 68} Here appellant argues that the trial court improperly intervened in his trial. He raises four separate issues for our review.
 {¶ 69} Appellant failed to object to any of the issues that he now takes issue with. A party's failure to bring an alleged error to the trial court's attention through an objection, waives the party's right to raise that alleged error on appeal. In re Z.C., 12th Dist. Nos. CA2005-06-065, CA2005-06-066, CA2005-06-081, CA2005-06-082,2006-Ohio-1787, at ¶ 18. Thus, we must review these alleged errors for plain error. Plain error should be invoked only to prevent a clear miscarriage of justice. State v. Underwood (1983), 3 Ohio St.3d 12, 14,444 N.E.2d 1332. Plain error is one in which but for the error, the outcome of the trial would have been different. State v. Long (1978),53 Ohio St.2d 91, 97, 372 N.E.2d 804. *Page 16 
 {¶ 70} First, appellant argues that the trial court should not have questioned Shattuck in order to clarify the facts offered to establish the proximity of children during the alleged drug sales.
 {¶ 71} Pursuant to Evid. R. 614(A) and (B), the trial court may call witnesses or impartially interrogate witnesses. State v. Davis (1992),79 Ohio App.3d 450, 454, 607 N.E.2d 543. The court may, in the interest of justice, develop facts germane to a factual issue to be determined by the jury. Id. A trial court's questioning of witnesses is a matter within its discretion. State v. Payne, 1st Dist. No. C-060437,2007-Ohio-3310, at ¶ 12.
 {¶ 72} At the conclusion of Shattuck's testimony, the court questioned him as to whether Lyons and her children were present during the drug sales. (Vol. I, Tr. 186-87). This consisted of only two questions: Were there children present on September 20 and were there children present on September 22.
 {¶ 73} By this time, Shattuck had already clearly testified that children were present during each occasion that he was at appellant's trailer. (Vol. I, Tr. 181-82). So the trial court's questions only reiterated what Shattuck had already testified to. Consequently, it was not plain error for the court to ask such questions.
 {¶ 74} Second, appellant contends that the trial court should not have sua sponte interrupted Kerry Teeter's, the bank employee's, testimony regarding the bank's interest in the farm property.
 {¶ 75} During her cross-examination, Teeter explained the bank's interest in the Dawson farm. The testimony was as follows:
 {¶ 76} "Q. Okay. Let me ask you this. When did the bank buy the property?
 {¶ 77} "A. When the sheriff's was — I don't have that date. But it never transferred until October of `06.
 {¶ 78} "Q. October of `06?
 {¶ 79} "A. That's when we became — we have ownership October the 5th of `06. *Page 17 
 {¶ 80} "Q. And when you alerted the sheriff that there were problems going on with the barn, wasn't that around May or June of this year?
 {¶ 81} "A. Correct.
 {¶ 82} "Q. Okay. The bank didn't own it at that time?
 {¶ 83} "A. Just a collateral interest.
 {¶ 84} "Q. Just a collateral interest?
 {¶ 85} "THE COURT: I was going to say, they did have an ownership interest by virtue of their mortgage.
 {¶ 86} "MR. MOUNT[appellant's counsel]: Yes, sir.
 {¶ 87} "THE COURT: They may not have held title until after the sale closed.
 {¶ 88} "MR. MOUNT: Yes." (Vol. II, Tr. 78).
 {¶ 89} Here the court merely clarified Sky Bank's interest in the Dawson farm. Teeter testified that the bank held a mortgage on the property. (Vol. II, Tr. 72). She further testified that the bank foreclosed on the property in October 2005. (Vol. II, Tr. 72-73). Teeter stated that once the owners left the property, the bank began maintaining the property in order to protect its interest. (Vol. II, Tr. 73). She also testified that at the foreclosure sale, Sky Bank purchased the property. (Vol. II, Tr. 74).
 {¶ 90} The court's statements did not contradict Teeter's testimony as appellant alleges. Teeter clearly stated that Sky Bank held a mortgage on the Dawson farm and that it foreclosed on the property in October 2005. She also clearly stated that the bank did not have title to the property until October 2006. The court's statement was merely to the effect that at the time of the theft, the bank's interest in the Dawson farm was by virtue of its mortgage. Thus, the court did not commit plain error in making these statements.
 {¶ 91} Third, appellant asserts that the trial court improperly instructed Lyons to answer a question that the prosecutor had withdrawn.
 {¶ 92} While questioning Lyons about her convictions related to the drug sales, she stated that she was not charged with aiding and abetting. (Vol. II, Tr. 91). *Page 18 
The prosecutor then asked her if showing her a document that said she was aiding and abetting would refresh her memory. (Vol. II, Tr. 91). Appellant did not object, but the prosecutor withdrew the question. (Vol. II, Tr. 91). The court then stated that Lyons could answer the questions. (Vol. II, Tr. 91). The prosecutor then referenced Lyons's indictment and she testified that she remembered that she was charged with and pleaded guilty to aiding and abetting in trafficking. (Vol. II, Tr. 91-92).
 {¶ 93} Appellant makes no argument as to how the court's instruction to Lyons to answer the question about her conviction was improper or how it in any way prejudiced him. The prosecutor simply refreshed Lyons's recollection with a copy of her indictment and she then testified as to her prior conviction. The court did not even raise any of its own questions or make any of its own statements as was the case with the previous two alleged instances of interference. No plain error occurred here.
 {¶ 94} Appellant also raises an unrelated fourth issue in this assignment of error. He asserts that the trial court improperly allowed the jury to retain a copy of his indictment during their deliberations. (Vol. II, Tr. 125).
 {¶ 95} The Ohio Supreme Court has specifically held: "The trial court has discretion in a criminal case to permit the jury to take the indictment to the jury room." State v. Graven (1977), 52 Ohio St.2d 112,369 N.E.2d 1205, at the syllabus. The Supreme Court more recently reaffirmed this holding in State v. LaMar, 95 Ohio St.3d 181,767 N.E.2d 166, 2002-Ohio-2128, at ¶ 127.
 {¶ 96} Furthermore, the trial court in this case specifically advised the jury that the indictment is not evidence. (Vol. II, Tr. 172). The court told the jury that the indictment was simply for the purpose of cross-referencing the instructions with the different counts. (Vol. II, Tr. 169). Given that whether to send a copy of the indictment with the jury is within the court's discretion and the fact that the court specifically instructed the jury that the indictment was not evidence, the trial court did not commit plain error here.
 {¶ 97} Accordingly, appellant's third assignment of error is without merit. *Page 19 
 {¶ 98} Appellant's fourth assignment of error states:
 {¶ 99} "SCHANDEL WAS DEPRIVED OF HIS RIGHTS TO CONFRONTATION AND DUE PROCESS OF LAW WHEN THE TRIAL COURT ADMITTED HEARSAY EVIDENCE CONTAINED IN A LABORATORY REPORT, WITHOUT ANY TESTIMONY FROM THE LABORATORY TECHNICIAN WHO PERFORMED THE SCIENTIFIC TESTS, AND WHEN THE TRIAL COURT INSTRUCTED THE JURY THAT THE LABORATORY REPORT WAS PRIMA FACIE EVIDENCE OF ITS CONTENTS, IN CONTRAVENTION OF THE FIFTH, SIXTH, ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION."
 {¶ 100} Deputy Watson testified regarding a report received from BCI. (State's Ex. 2). The report stated that the white tablets he submitted contained hydrocodone. (Vol. I, Tr. 99-102, 111). The state also submitted the affidavit from the BCI lab technician concerning his qualifications to perform the tests on the drugs. (Vol. I, Tr. 101).
 {¶ 101} The trial court later instructed the jury:
 {¶ 102} "By statute, which is Ohio Revised Code Section 2925.51(A), a laboratory report from the Bureau of Criminal Identification and Investigation or BCI — which in this case was State's 2, I think signed by the person performing the analysis and stating what the substance forming the basis of the alleged offense, in this case, Hydrocodone, has been weighed and analyzed by that agency is as a matter of law, prima facie evidence of a content, identity and weight or existence of that substance.
 {¶ 103} "That report, you will have it in the jury room, is a self-authenticating document, which may be admitted into evidence without any oral testimony from the chemist in support." (Vol. II, Tr. 176).
 {¶ 104} Appellant contends here that the trial court should not have admitted testimony from Deputy Watson as to the contents of a BCI report. (Vol. I, Tr. 99-102, 111). He further contends that the court should not have instructed the jury that the *Page 20 
BCI report constituted prima facie evidence of the contents of the report. (Vol. II, Tr. 175-77). Appellant argues that the statute that permitted this, R.C. 2925.51, is unconstitutional because it permits the admission of a BCI lab report as prima facie evidence without requiring the testimony of the lab technician who performed the tests.
 {¶ 105} R.C. 2925.51(A) provides in pertinent part:
 {¶ 106} "In any criminal prosecution for a violation of this chapter or Chapter 3719. of the Revised Code, a laboratory report from the bureau of criminal identification and investigation, * * * signed by the person performing the analysis, stating that the substance that is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance and that it contains any amount of a controlled substance and the number and description of unit dosages, is prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substance."
 {¶ 107} Firstly, appellant failed to raise an objection to R.C. 2925.51's constitutionality in the trial court. When a constitutional challenge is not raised in the trial court, it ordinarily will not be addressed for the first time on appeal. In re K., 8th Dist. No. 83410, 2004-Ohio-4629, at ¶ 13, citing State v. Childs (1968),14 Ohio St.2d 56, 236 N.E.2d 545, paragraph three of the syllabus. "The `failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal.'" Id., quoting State v. Awan (1986), 22 Ohio St.3d 120,489 N.E.2d 277, at the syllabus.
 {¶ 108} Secondly, R.C. 2925.51(C) expressly provides: "The reportshall not be prima-facie evidence of the contents, identity, and weight or the existence and number of unit dosages of the substance if theaccused or the accused's attorney demands the testimony of the personsigning the report, by serving the demand upon *Page 21 
the prosecuting attorney within seven days from the accused or the accused's attorney's receipt of the report." (Emphasis added.)
 {¶ 109} Thus, had appellant or his counsel wished to question the lab technician who concluded that the subject pills were in fact hydrocodone, they could have simply demanded his presence as stated by R.C. 2925.51(C). No such demand was made.
 {¶ 110} Accordingly, appellant's fourth assignment of error is without merit.
 {¶ 111} Appellant's fifth assignment of error states:
 {¶ 112} "THE TRIAL COURT ERRED AND DEPRIVED SCHANDEL OF HIS RIGHT TO A FAIR TRIAL, WHEN IT ADMITTED UNFAIRLY PREJUDICIAL OTHER ACT EVIDENCE; WHEN IT ADMITTED IRRELEVANT EVIDENCE REGARDING ANOTHER INDIVIDUAL'S CRIMINAL BEHAVIOR; AND WHEN IT ADMITTED IMPROPER BOLSTERING TESTIMONY, IN CONTRAVENTION OF OHIO EVID.R. 401, 402, 403(A), 404(B), R.C. 2945.59, AND THE DUE PROCESS CLAUSES OF BOTH THE STATE AND FEDERAL CONSTITUTIONS."
 {¶ 113} In this assignment of error, appellant takes issue with the admission of certain testimony. Appellant did not object to the testimony that he now takes issue with. Thus, this assignment of error will be reviewed for plain error.
 {¶ 114} First, appellant argues that the trial court should not have admitted testimony that he had prior contact with law enforcement.
 {¶ 115} Relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evid. R. 403(A). Additionally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid. R. 404(B).
 {¶ 116} During his testimony, Deputy Watson stated that he confirmed information given to him by Shattuck that the people Shattuck would attempt to buy Vicodin from were appellant and his live-in girlfriend, Diane Lyons. (Vol. I, Tr. 82). The prosecutor then asked Deputy Watson if he was familiar with appellant before *Page 22 
this time. (Vol. I, Tr. 82). Deputy Watson stated that he was familiar with appellant because he had responded to appellant's residence previously and appellant was "in and out of the justice system off and on." (Vol. I, Tr. 82). Later, in discussing appellant's residence where the controlled buy took place, the prosecutor asked Deputy Watson if he knew who actually resided there. (Vol. I, Tr. 89). Deputy Watson responded that he knew who lived there because he had been there before. (Vol. I, Tr. 89).
 {¶ 117} The trial court did not commit plain error by admitting Deputy Watson's testimony. When he made the alleged prejudicial statements, Deputy Watson was not commenting on appellant's character or attempting to show that appellant acted in conformity therewith. As to the first statement, Deputy Watson was merely describing his investigation and mentioned appellant's run-ins with the law in passing. His testimony that he was familiar with appellant was meant only to show that he knew who appellant was. And as to the second statement, Deputy Watson only stated that he had been to appellant's trailer before. He did not say why nor did he imply that the reason he was there was to investigate any criminal behavior on appellant's part.
 {¶ 118} Second, appellant argues that the trial court should not have admitted evidence of another alleged drug sale involving only his girlfriend.
 {¶ 119} In discussing the controlled buys utilizing the CI, Deputy Watson mentioned that another sale was made from Lyons to Shattuck. (Vol. I, Tr. 102). However, this testimony was merely mentioned in the discussion of Deputy Watson's investigation of appellant. It was brief and was made only in passing. (Vol. I, Tr. 102). Furthermore, the prosecutor later clarified with Deputy Watson that appellant was not involved at all in the drug sale from Lyons to Shattuck. (Vol. I, Tr. 128).
 {¶ 120} While the drug sale involving only Lyons may not have been relevant to appellant's case, its admission was not plain error. The mention of Lyons's drug sale was transitory. Furthermore, the prosecutor later made clear with Deputy *Page 23 
Watson that appellant had nothing to do with Lyons's sale. Thus, the prosecutor wanted to ensure that mention of Lyons's drug sale did not prejudice appellant.
 {¶ 121} Third, appellant argues that the trial court should not have permitted Deputy Watson to testify that he believed the CI's information was truthful.
 {¶ 122} The prosecutor questioned Deputy Watson about Shattuck's history in working with the police. (Vol. I, Tr. 129). Deputy Watson testified that Shattuck had provided him information in approximately 13 cases. (Vol. I, Tr. 129). He stated that he never found any of the information Shattuck provided to be untruthful. (Vol. I, Tr. 129). Deputy Watson further stated because Shattuck had done such a good job, other agencies were also using Shattuck for information. (Vol. I, Tr. 129).
 {¶ 123} The trial court did not commit plain error in allowing Deputy Watson to testify as to Shattuck's past work with police. Deputy Watson made a few statements as to Shattuck's prior work with the police. Such is not uncommon in cases where a CI is used. Additionally, Shattuck took the stand in this case. Therefore, appellant had the opportunity to cross-examine Shattuck and to establish that he was untruthful, thereby rebutting Deputy Watson's testimony.
 {¶ 124} Furthermore, appellant cannot demonstrate any prejudice from Deputy Watson's comments on Shattuck's truthfulness. While the jury convicted appellant on one count of drug trafficking, it acquitted him of the other count. Each count involved a separate alleged drug sale from appellant to Shattuck. As to both drug buys, Shattuck testified that appellant sold him the drugs. However, as to the first drug sale the evidence was not as convincing because Shattuck left with Lyons for a period of time and Lyons testified that she sold Shattuck the drugs when they were alone in the car together. Thus, despite Deputy Watson's testimony as to Shattuck's veracity, the jury found his testimony to be incredible as to the first alleged drug sale.
 {¶ 125} Accordingly, appellant's fifth assignment of error is without merit.
 {¶ 126} Appellant's sixth assignment of error states: *Page 24 
 {¶ 127} "SCHANDEL WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, IN CONTRAVENTION OF THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."
 {¶ 128} Appellant argues here that his trial counsel was ineffective.
 {¶ 129} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different.Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
 {¶ 130} Appellant bears the burden of proof on the issue of counsel's effectiveness. State v. Calhoun (1999), 86 Ohio St.3d 279, 289,714 N.E.2d 905. In Ohio, a licensed attorney is presumed competent. Id.
 {¶ 131} Appellant first asserts that his counsel should have either demanded the presence of the BCI lab technician who performed the testing on the hydrocodone tablets so that he could cross-examine the technician or objected to the technician's absence. He contends that this error was prejudicial because the BCI report was the only evidence that established that the tablets were in fact hydrocodone.
 {¶ 132} Trial tactics are generally not subject to question by a reviewing court. State v. Fryling (1992), 85 Ohio App.3d 557, 562,620 N.E.2d 862. Whether to cross-examine a particular witness is within the realm of trial tactics. State v. Otte (1996), 74 Ohio St.3d 555, 565,660 N.E.2d 711. "Trial counsel need not cross-examine every witness; indeed, doing so can backfire." Id. *Page 25 
 {¶ 133} In this case, Deputy Watson testified that he sent the pills from the drug sale to BCI for testing. He then testified that the report submitted to him from BCI showed that the pills contained hydrocodone. The BCI report was also admitted into evidence. It is likely that appellant's counsel made the strategic decision not to demand the presence of the BCI technician for cross-examination. Counsel may have believed that calling the technician to the stand would have only bolstered the report finding that the pills contained hydrocodone. He may have looked into the issue and found that the technician performed the tests properly and reached the proper conclusion. Thus, any cross-examination would not have helped appellant's case. We will not second-guess trial counsel's decision not to demand the presence of the technician.
 {¶ 134} Appellant next contends that his counsel should have objected to the testimony regarding his prior involvement with law enforcement, his girlfriend's alleged drug sale, and the bolstering of the CI's credibility as set out in his fifth assignment of error.
 {¶ 135} "[T]rial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." State v. Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76. Additionally, had appellant's counsel made the proposed objections, they likely would have been overruled by the trial court. As discussed above, the objectionable testimony was not prejudicial and would have been admissible even if appellant's counsel had objected.
 {¶ 136} Finally, appellant argues that his counsel should have objected when the trial court judge intervened in his trial as set out in his third assignment of error.
 {¶ 137} As just noted, counsel's failure to raise objections is within the ambit of trial tactics and does not establish ineffective assistance of counsel. Taylor, 9th Dist. No. 01CA007945, at ¶ 76. And as discussed in appellant's third assignment of error, there was no error in the trial court's questions and comments.
 {¶ 138} Furthermore, even without any of the objectionable evidence or the trial court's questions and comments, the rest of the evidence is what proved *Page 26 
appellant's guilt. Thus, he can show no resulting prejudice from these alleged deficiencies in counsel's performance because the jury would have found him guilty of the same charges.
 {¶ 139} Accordingly, appellant's sixth assignment of error is without merit.
 {¶ 140} Appellant's seventh assignment of error states:
 {¶ 141} "THE TRIAL COURT ERRED IN SENTENCING SCHANDEL TO PAY RESTITUTION, AND TO SERVE NONMINIMUM, MAXIMUM, AND CONSECUTIVE PRISON TERMS, IN CONTRAVENTION OF HIS RIGHTS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 {¶ 142} The trial court sentenced appellant to 12 months on the theft count and 18 months on the drug trafficking count and ordered that appellant serve the two sentences consecutively for a total of 30 months. Both of the sentences were the maximum sentences allowed.
 {¶ 143} Appellant first points out that on the date he committed the drug trafficking charge, September 22, 2005, Ohio law required the trial court to make certain factual findings on the record before imposing a more-than-the-minimum sentence, a maximum sentence, or consecutive sentences. Therefore, he argues that the trial court in this case was required to make those factual findings before imposing maximum, consecutive sentences on him despite the Ohio Supreme Court's February 2006 decision in State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470,2006-Ohio-856, which held the statutes that required this judicial fact-finding to be unconstitutional.
 {¶ 144} Foster held that after severing the unconstitutional statutes, judicial fact-finding is not required before imposition of more-than-the-minimum, maximum, or consecutive prison terms. Id. at paragraphs two and four of the syllabus. Consequently, trial courts are now free to sentence an offender to any sentence within the statutory range as long as the sentence is not otherwise contrary to law.
 {¶ 145} Appellant argues that Foster's remedy cannot be applied to him. He asserts that Foster's remedy is unconstitutional because it increases the presumptive *Page 27 
sentence for a first-time offender, and for anyone convicted of a fourth- or fifth-degree felony, to the statutory maximum. Thus, he contends that it violated the Ex Post Facto and Due Process Clauses of the Constitution.
 {¶ 146} This court has addressed this issue on several occasions and has consistently held that Foster's remedy does not violate the Ex Post Facto or Due Process Clauses of the Constitution. See State v.Hawkins, 7th Dist. No. 07-JE-12, 2008-Ohio-1529; State v. Balwanz, 7th Dist. No. 07-BE-20, 2007-Ohio-5041; State v. Harris, 7th Dist. No. 06-JE-36, 2007-Ohio-3173; State v. Palmer, 7th Dist. No. 06JE20,2007-Ohio-1572. Our reasons for so holding need not be reiterated again here.
 {¶ 147} Next, appellant contends that Foster's remedy directly conflicts with the Ohio Legislature's intent in enacting Senate Bill 2, the "truth in sentencing" bill. He asserts that per the United States Supreme Court's decision in Cunningham v. California (2007),549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856, a state court cannot apply theUnited States v. Booker (2005), 543 U.S. 220, 125 S.Ct. 738,160 L.Ed.2d 621, severance remedy to state sentencing statutes in the manner in which the Foster Court did.
 {¶ 148} Cunningham is the most recent decision in a line of United States Supreme Court cases dealing with felony sentencing followingApprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435, Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403, and United States v. Booker (2005), 543 U.S. 220,125 S.Ct. 738, 160 L.Ed.2d 621. Cunningham dealt with the application of the felony sentencing cases to the California sentencing scheme. It held that California's determinate sentencing law was contrary to the dictates of the Sixth Amendment.
 {¶ 149} Recently this court found:
 {¶ 150} "It is clear that Cunningham dealt with a California felony system that is not at all similar to Ohio's system, and its holding does not affect the validity of Foster. Appellant was sentenced under the discretionary standard set forth in Foster, *Page 28 
and the judge was not required to sentence him to the minimum possible sentence allowed by law." State v. Aaron, 7th Dist. No. 07-HA-1,2008-Ohio-1186, at ¶ 1.
 {¶ 151} Thus, we have already determined that Cunningham does not affect the Foster severance remedy and that trial judges are not required to sentence defendants to the minimum possible sentence allowed.
 {¶ 152} Appellant additionally argues that the trial court erred in requiring him to pay restitution in an amount exceeding the damage amount caused by the theft of the copper wire. He argues that the state never established the exact amount of damage caused by the theft, only that the amount exceeded $500.
 {¶ 153} As a sanction for a felony, the trial court may order restitution by the offender to the victim of the offender's crime in an amount based on the victim's economic loss. R.C. 2929.18(A)(1). Restitution is limited to the economic loss caused by the defendant's illegal conduct for which he or she was convicted. State v. Hooks
(2000), 135 Ohio App.3d 746, 749, 735 N.E.2d 523,
 {¶ 154} The court shall determine the amount of restitution at sentencing. R.C. 2929.18(A)(1). The amount of restitution must be supported by competent, credible evidence from which the trial court can discern the amount of restitution to a reasonable degree of certainty.State v. Gears (1999), 135 Ohio App.3d 297, 300, 733 N.E.2d 683. It is an abuse of discretion for a trial court to order restitution in an amount that does not bear a reasonable relationship to the actual loss suffered. State v. Lacey, 5th Dist. No. 2005-CA-119, 2006-Ohio-4290, at ¶ 40.
 {¶ 155} In this case, the trial court ordered appellant to pay $5,030 jointly and severally "with the co-defendants" as restitution for the theft offense. There are several problems with this order of restitution.
 {¶ 156} First, the co-defendants that the court appears to refer to are Nolan, Bryant, and Mullins. Mullins testified that the co-defendants had been ordered to pay $5,000 in restitution jointly and severally with any co-defendants. (Vol. II, Tr. 51). However, appellant was not involved in the theft of the aluminum roofing as were the *Page 29 
others. And he was not convicted of breaking and entering, only of theft and receiving stolen property.
 {¶ 157} Second, competent, credible evidence does not exist to support the court's order of $5,030 in restitution. The only evidence of this amount was Mullins's testimony that Bryant and her co-defendants were ordered to pay $5,000 jointly and severally for their roles in the breaking and entering of the barn and theft of the aluminum roofing. (Vol. II, Tr. 51). No other evidence as to this amount was presented. The evidence submitted at trial established only that the wire appellant stole was worth at least $500. Furthermore, there is no competent, credible evidence in the PSI to support the court's $5,030 restitution order.
 {¶ 158} Accordingly, appellant's seventh assignment of error has merit only as it pertains to the court's restitution order.
 {¶ 159} For the reasons stated above, appellant's convictions are hereby affirmed. His prison sentence is likewise affirmed. However, the trial court's order of restitution is reversed and the matter is remanded for a hearing on the issue and amount of restitution.
Waite, J., concurs.
 DeGenaro, P.J., concurs. *Page 1